And we'll begin with the regular motions calendar, and then move to the day calendar. So we'll hear first, GEOMC Co. v. CalMare Therapeutics. Mr. Feldman. Go ahead. May it please the court. Will Feldman on behalf of CalMare Therapeutics. We're here today on CalMare's motion to stay the judgment pending appeal. If the judgment below is not stayed, CalMare will suffer irreparable harm. It will be required to surrender to GEO nearly 400 patented pain management devices worth $36 million, nearly all of its assets, without any viable way to recover those devices if the judgment is reversed. If GEO takes possession of the devices, it may ship them out of the United States to sell them here for a fraction of what they're worth. Either way, CalMare would be left with no inventory, even if it succeeds in this appeal. Now, GEO will not be harmed by the stay that CalMare requests for several reasons. First— It would be if we agreed with you amenable to an expedited appeal. Yes, Your Honor. On that note, CalMare filed its merits brief on March 1. Under the current calendar, the appeal would be fully briefed in less than 60 days. June 14 is when the reply brief would be due. And certainly, whether that might be expedited or, at the very least, expedited oral argument or decision, that would certainly be fine. And that factors into the lack of harm that GOC would incur by a short stay of only two months, three months. During that time, these pain management devices will be stored in a bonded warehouse where they've been located for the last several years, and they can remain there until such time as the appeal is resolved. You have no objection to telescoping the current schedule? No. No, Your Honor, not at all. We are amenable to whatever the court decides. GO, I believe, set the briefing schedule for their brief, the maximum possible time, almost 90 days. In fairness, we did the same. If we shortened it, that wouldn't trouble you? No, it would not trouble me at all. Would the opposing counsel have a view on that? Yes, that's right. In terms of what the timing might be on a reply brief, certainly we've briefed these issues in the district court, in my opening brief, and even in the context of this motion to stay. So we're very much ready to proceed with the merits of this appeal. And I want to just touch briefly on those merits, because I know it's one of the factors that this court must consider. One thing that stands out to me is this 18 percent prejudgment interest rate. Normally, prejudgment interest might not be a significant issue, but here the court awarded 18 percent prejudgment interest on the entire underlying monetary judgment. It effectively awards more money in prejudgment interest than it does in the judgment itself. It based that decision on a separate provision of the contract, in a separate agreement, that applies only to liquidation costs, which are costs associated with attorney's fees, et cetera, and enforcing certain obligations. It does not apply to a monetary judgment. So the judgment has to be reversed for that reason alone, and that is it is not an inconsequential sum. It's about a $5.6 million in interest on a $4 million judgment. So perhaps you could explain to us what exactly would happen if we grant your request for a stay, physically what happens. There are devices located somewhere, right? Well, there are warehouses in Connecticut. There was one in North Carolina. I believe the devices are now located in the Connecticut warehouse. These are bonded warehouses, which are essentially customs warehouses. They have been there for the last several years. Is that the full extent of what's at issue? Your Honor, there's also a monetary judgment, but it's one or the other. They can try and force a monetary judgment, which is $10 million, or try to collect, repossess these devices. What about the devices in North Carolina? If there are still devices in North Carolina, they would be in the same, they'd also be in a bonded warehouse. And those are secure warehouses, too, because of just the way they're regulated. So they would remain very secure during that time. We've established a number of other merits points as well, which we'd like to expand on on the merits of this appeal when the time comes. We think the court erred in interpreting the breach of contract provision to essentially allow for a change to the timing of payment for the parties under their contract. But admitted there was no written amendment to that provision, as is required. And the last thing that I think you should be concerned about is if a stay is not granted, there's a good chance that Jio, the South Korean company, would attempt to take the devices out of the United States, going to South Korea, to other places around the country, the nation, rather, the world, where it can sell the devices. It cannot sell them here, because they lack the FDA clearance that they need. I see my time has already expired. We request that the motion to stay be granted. Thank you, Your Honor. May it please the Court. Richard Zuckerman for GOMC. The judgment here was entered on September 29th. It already, in effect, has been stayed for six months. Judge Bolden gave... Can you explain why a motion like this, I should ask Mr. Feldman, and I will in due course, why, if that's the case, the motion for a stay comes to us so late in the day? Certainly, Your Honor. What's been happening since the entry of the judgment? The judgment was entered on September 29th. Judge Bolden gave CTI three months within which they could pay the judgment before we would have a right to repossess the devices in which GOMC has a valid upheld security interest. That brought us to the end of December. A few days before December 31st, CTI, having waited three months without paying a dime on the judgment, made a motion for a stay. Judge Bolden found that there were no grounds for granting a stay, that CTI was not entitled to a stay. It had not even made any attempt to show that it was likely to succeed on the merits, and Judge Bolden found the other factors collectively weighed in favor of denying a stay, granted a brief stay to allow CTI to make an application to the court, and CTI made the application to this court on January 5th, which kept Judge Bolden's stay in effect, so deferring to this court so that the temporary stay would remain in effect. So in that six months, we've been unable to enforce the judgment. GOMC has a judgment for $10 million. There's no reason why it should be stayed without there being a bond equal to the amount of the judgment. GOMC intends, as has been stated in our brief to this court in opposition to the stay, once the judgment . . . as long as the judgment remains in effect and has not been stayed, to proceed with a UCC sale of the devices in the United States pursuant to a contract that will become . . . where the closing will take place if the stay is vacated. It's in the United States. The devices are not being removed from the country, and that's entirely as permitted by the UCC. When one . . . Is all that you're saying understood or well known to Mr. Feldman? We've stated in the papers that we would proceed with a UCC sale if the stay was no longer in effect. I'm simply advising the court and advising Mr. Feldman now that there's a contract to proceed with that. If one turns to the likelihood of success on the merits, the CTI doesn't come close to establishing the slightest chance of success on the merits. This is an appeal which seeks to hold clearly erroneous a finding of fact made by the district judge after a bench trial based upon the credibility of the sole witness with personal knowledge of the facts as to what . . . as to when the payment was due on the devices. The second branch on the likelihood of success of their appeal challenges the validity of a security agreement saying that the chief executive officer of CTI didn't have authority to sign the security agreement, didn't have either actual or apparent authority they contend, and they ignore the fact that the CTI chief executive officer who signed the security agreement signed all of CTI's SEC filings, that the security agreement was prepared by the secretary of the board of directors, and CTI's bylaws specifically gave the chief executive officer authority to sign contracts on behalf of the corporation. So the notion that there's a likelihood of success on the merits is as thin as one could possibly imagine. The proposal for alternative security that was made by CTI is a proposal to put GEOMC in a worse position than it's been in with having a security interest. A security interest in the devices meant that all of the devices were subject to the security interest, and if any devices were sold, the proceeds from the sales of the devices were subject to the security interest. CTI proclaims that the devices are worth $90,000 each. Well, they sold 11 devices for $90,000 in 2016, and they paid not one penny to GEOMC. So what you have here, your honors, is a company that- You're talking about 400 medical devices, right? That is correct, your honor. And each of them, in your view, is worth how much? The wholesale price to CTI was $10,000 per device. A retail price can range anywhere from $30,000 per device to the $90,000 that they were able to get, but the market is quite large. If you were to collect on the judgment for $10 million within a reasonable period of time, one would be fortunate to get the $10,000 per device wholesale price or something more than that, and the notion that you could get anything close to the $90,000 per device is fanciful. I also would note, your honors, I note the red light is on, but one last point, your honors. If indeed these devices are worth the $36 million that CTI claims, they could have borrowed against the devices. They could have gotten an investor to fund so they could pay the judgment or so that they can bond the judgment pending the appeal. GEOMC has been waiting for six years, seven years now, to be paid. It should not be required to wait any longer. Thank you, your honors. Mr. Feldman, I'll give you a minute if you care to take it to respond to anything you've learned from Mr. Zuckerman. Well, I first want, your honors, the question was why we waited so long to file and seek relief in the district court. I was retained later in the matter after trial, and for a long period of time, we sought to try and bond the judgment, which is the standard way to do this so we wouldn't have to come before this court, and worked with the CEO to try and figure out a way to make that happen. We also tried to work with GEO to arrange alternative security, recognizing the value of the devices themselves, and just couldn't come to an agreement. Unfortunately, we had to file the motion we did in advance of that December 31st deadline and seek relief in that matter. Otherwise, the last thing I would say is your honor talked about expedited briefing and if GEO has waited a significant period of time, this appeal can be resolved in a matter of months, and that's the end of the matter. And the last thing I want to say is that devices are worth $95,000 based on the only testimony in the record, which is based on actual sales. The $10,000 is GEO's cut and is not the price of the device. Your colleague was trying to get your attention. Right, and that's the point. This $10,000 per device is what we want to avoid. We don't want to hand the devices over and have GEO sell them for what we think is far below their market value. That leaves us with nothing. We have every incentive to sell these devices for as much as they're possibly worth, and that's what we would like to do ultimately. Thank you. We'll reserve decision. Thank you.